WILLIAM SHAEFFER *et al.* plaintiffs in error, *v.* HARRIET WEED *et al.* defendants in error.

*Error to White.*

The proceeding to enforce a mechanics' lien is strictly a Chancery proceeding, and must be governed by the rules of pleading applicable to Chancery cases. In Chancery, special replications are no longer allowed, and if filed, can only be treated as general replications.

A widow's dower cannot be affected by the lien created by the statute for the benefit of mechanics, &c.; but she is entitled to dower in all the real estate of which her husband was seized during coverture, unless she has released it in the form prescribed by law, except where a lien is created for the purchase money at the time the husband became seized.

A widow is not a proper party to a proceeding for a mechanics' lien, where her only interest is her dower in the premises.

The term *"creditor,"* as used in the sixty fifth chapter of the Revised Statutes, entitled *"Liens,"* is applied to him who has a lien by contract made under the law; and the term *"incumbrancer,"* to the one who has such lien by mortgage, judgment or otherwise, except under this law.

If a creditor, who has furnished labor and materials, shall not file his bill until after the expiration of six months from the time payment was due to him by the terms of the contract, his lien ceases as against any other *such* creditor or incumbrancer, by mortgage, judgment, or otherwise, existing at the time of the rendition of his judgment, whether the same were creditors prior, or subsequent to the making of the contract under which he seeks to enforce his lien.

PETITION for a mechanics' lien, &c, in the White Circuit Court, heard at the September term 1846, before the Hon. William Wilson. The facts are as follow:

The plaintiffs in error furnished materials, and did work on a house for William Weed in his lifetime, but owing to his death the job was left unfinished. Weed, at his death, left Harriet, his widow, and William, his son and only heir at law. Administration of his estate was taken out by one Sidney Cave, who very shortly died, and administration *de bonis non* was taken out by one John Gillison. About seven months after the death of Weed, the plaintiffs filed their petition under the mechanics' lien law, to enforce payment out of the house and land on which it stands, making the widow, heir and administrator *de bonis non*, parties thereto. The

Shaeffer *et al. v.* Weed *et al.*

administrator answered, stating that the estate was insolvent; that the widow was entitled to dower; and that the petition had not been filed within six months after the payment became due. To this the plaintiffs filed a long special replication, and as a rejoinder to which the administrator simply reiterated that the petition had not been filed in six months, &c. To this rejoinder the plaintiffs demurred, the Court overruled the demurrer, and the plaintiffs saying nothing further, gave judgment for the defendant, Gillison, for costs.

*A. Lincoln* argued for the plaintiffs in error, and *A. T. Bledsoe* for the defendants in error.

The Opinion of the Court was delivered by

CATON, J.* The judgment in this case must be reversed, and the cause remanded for a trial of the issue joined.

As if this were a proceeding at law, a special replication has been filed by the plaintiffs to the answer of the defendant, and to this there is a special rejoinder by the defendant, which was demurred to by the plaintiff, upon which it was supposed that the questions which have been argued were properly presented.

On a former occasion it was determined by this Court, that this was strictly a Chancery proceeding, and hence it must be governed by the rules of pleading applicable to Chancery cases. In Chancery, special replications are no longer allowed, and if filed they can only be treated as general replications. *Bryan* v. *Wash*, 2 Gilm. 561. We are, however, not constrained to this course by the general rules of Chancery pleading alone, for by the seventh section of the Act under which this suit was brought, it is provided, that the issue shall be formed by the filing of a replication. This could not be the case with a special replication. In the case of *Kimball* v. *Cook*, 1 Gilm. 428, which was a case under this statute, this Court says: "As in Chancery cases no re-

---

* DENNING, J. did not sit in this case.

Shaeffer *et al. v.* Weed *et al.*

joinder can be filed, the replication must of course be general, and hence if the answer sets up new matter, which requires to be admitted or avoided, or otherwise specially replied to, no doubt can be entertained but it must be done by amending the bill, and inserting the new matter in the charging part, and then explaining it, as in ordinary cases in Chancery." This case in fact stood upon bill, answer and replication, and the demurrer was filed to a paper, which properly did not belong to the record. In that state of the pleading, the Court should have proceeded to the trial of the issue.

Notwithstanding the questions which have been argued are not strictly presented by the record, yet as both parties have strongly solicited a decision of them, as they must necessarily be involved in the final determination of the case in the Court below, they have, therefore, been considered by the Court as if they were properly presented by the record as was supposed, and the views of the Court will be given upon them.

We are clearly of opinion, that the widow's dower cannot be affected by the lien created by this statute. She cannot be divested of her dower in that way. She'is entitled to her dower in all the real estate of which her husband was seized during coverture, unless she has released her dower in the form prescribed by law, except where a lien is created for the purchase money, at the time the husband became seized. Whether the suit were commenced before or after the expiration of the six months mentioned in the twenty fourth section of this chapter, the widow's dower cannot be affected by it. This right the husband can in no possible way incumber, impair or affect, without her consent manifested in the way prescribed by law.

It was said that a decree should go against her here, because as to her the bill was taken for confessed. It is true that she has not answered the bill, nor was she bound to answer it, for it does not make a case, which, when admitted, authorizes a decree against her. She was not a necessary, or

even proper party to the proceeding, and as to her the bill should be dismissed with costs.

Upon the other question argued, Mr. Justice Purple will express the opinion of the majority of the Court in which I fully concur.

The judgment of the Circuit Court must be reversed with costs, and the cause remanded for further proceedings consistently with the Opinion of this Court.

The Opinion of a majority of the Court was delivered by

PURPLE, J. In this case a question has been made, and a difference of opinion exists among the members of the Court in relation to the construction to be given to the phrase "any other creditor," as employed in the twenty fourth section of the Act embraced in chapter sixty five, of the Revised Statutes, entitled "*Liens.*" I propose, briefly, to state my views upon this subject, which I am instructed to say is the opinion of the majority of the Court. The section provides, that "no creditor shall be allowed to enforce the lien created under the provisions of this chapter, as against, or to the prejudice of any other creditor, or incumbrancer, unless suit be instituted to enforce such lien within six months after the last payment for labor or materials, shall have become due and payable."

To obtain a proper understanding of the meaning of this provision, we must look at other portions of the law. The first section of the Act gives to persons contracting with the owner of a tract or lot of land for materials furnished, or labor done under such contract, in erecting or repairing any building upon the lands or lot, a lien upon the land or lot for the value of the labor done or materials furnished, from the date of the contract. In point of time, this lien is indefinite against the owner, and so far as this section is concerned, against all the world.

By the eighteenth section, it is extended against the representatives in interest of a deceased contractor. It is restricted and limited, however, by other provisions of the law, in its operation against some other creditors and incumbrancers.

*First.* By the eleventh section, which provides that

"upon questions arising between different creditors, no preference shall be given to him whose contract was first made." Creditors here can only be supposed to mean such persons as under contracts furnish labor and materials in erecting or repairing buildings upon the land against which the lien is sought to be enforced; and because of their equal equities, they are placed upon an equal footing in regard to their several liens, although the contract of one may have been made before the contract of the others.

*Second.* If incumbrances exist prior to the contract, by mortgage, judgment, or otherwise, they are not affected by the Act; except that, by the 20th section, the contract lien takes precedence of the prior one, to the extent of the improvements made under such contract.

*Third.* When, as by the 24th section, the creditor shall for the period of six months after the time of payment according to the contract shall have passed, neglect to institute suit to enforce his lien, he will not afterwards be permitted to do so to the prejudice of any other creditor or incumbrancer.

If the term "any other creditor," as here employed, means creditors at large, it is the only place in the whole statute where it can possibly be construed in that sense. To me it seems clear, that it can only be construed to refer to a creditor who may have a lien for labor or materials, like the one in the first clause of the section mentioned, whose time of payment had not yet exceeded the six months allowed by law, in which to file his petition for a lien, and who, thus situated, as against the petitioning creditor who has slept upon his rights, is entitled to come in, be made a party, and take precedence in payment of his claim. For this reason, and to keep up the distinction which is drawn in other portions of the law, the Legislature have used the term "any other creditor or incumbrancer."

The objection that if the term "creditor" is thus limited in its operation, and applied only to these special lien claimants, that there is no weight or meaning given to the expression, and that the word "incumbrance" would have embraced all that the framers of the law intended, is an objection which operates both ways. If they had designed to include all

creditors of every class and description, the designation of "any other creditor" would have been sufficient for that purpose; and the addition of the word "incumbrance" entirely superfluous. Every incumbrancer would have been one of the creditors thus named. By such construction, the word "incumbrance" would add nothing to the sense or meaning of the law. By the one which I have adopted, all the language has a fixed and definite signification.

This same distinction is taken in, I believe, every other provision of the Act, and whenever the term "creditor" is used, it is applied to persons claiming liens under it.

In the third section it is provided, that "when any sum due by such contract shall remain unpaid after the same is payable, the creditor may, upon bill or petition filed in the Circuit Court, obtain an order," &c. So, also, in the eleventh section which has been before referred to. And in the latter clause of the sixteenth section it is stated: "and when one creditor shall have obtained a verdict or judgment for the amount due, the Court may order a sale," &c. Likewise, in the last clause of the seventeenth section, the following language occurs: "And the creditor may cause the right of redemption, or whatever right or estate such owner had in the land at the time of making the contract to be sold," &c. And in the 20th section it is said: "and upon questions arising between previous incumbrancers and creditors, under the provisions of this chapter, the previous incumbrance shall be preferred to the extent of the value of the land, at the time of making the contract," &c.

The provision in the 22d section is, that "creditors who file bills or petitions under the provisions of this chapter, may contest the validity of incumbrances, as well in regard to amount as to their justice; and any incumbrance, whether by mortgage, judgment or otherwise, charged and shown to be fraudulent in respect to such creditor, or to creditors generally, may be set aside," &c.

The 25th section provides, that "nothing contained in this chapter shall be construed to prevent any creditor from maintaining an action at law upon his contract in like manner as if he had no lien for the security of his debt.

Shaeffer *et al. v.* Weed *et al.*

Section 26 makes provision, that if the claims of all parties are not satisfied by the sale of the premises, any creditor whose claim is not satisfied may have execution against other property of the debtor for the residue. And the 27th section disposes of the costs as between creditors claiming liens, and between such creditors and the person against whom the lien is sought to be enforced, and also establishes the same rule in respect to costs growing out of proceedings against and between incumbrancers.

These extracts from and reference to the several provisions of the statute, most manifestly show in what sense the term "creditor," and "incumbrance," or "incumbrancer" have been used by those who made the law. The distinction, in every instance, seems to me to be clear and plain, the creditor being the party having a lien by contract made under the law, and the incumbrancer one who has such lien by mortgage, judgment or otherwise, except under this Act. Obviously, the Legislature did not intend to prohibit the creditor from enforcing his lien as against the contracting party, because he had permitted more than six months after the time at which payment was to have been made to elapse; and it is to my mind equally apparent, that it contemplated no such impracticability, or absurdity as to allow upon petition filed by the lien creditor, creditors at large, who had no liens, to come in, and make themselves parties to the suit, and thus compel the debtor to adjust and settle all claims and controversies between him and his neighbors, (over which a Court of Chancery would ordinarily have had no jurisdiction,) in one proceeding of this character. But if the creditor, who has furnished the labor or materials, shall not file his bill until after the expiration of six months from the time payment was due to him by the terms of his contract, in that case, his lien ceases as against any other such creditor, or incumbrancer by mortgage, judgment, or otherwise, existing at the time of the rendition of his judgment, whether the same were created prior, or subsequent to the making of the contract under which he seeks to enforce his lien.

*Judgment reversed.*